UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

THUNDER ISLAND AMUSEMENTS,
INC.; HAROLD L. PERAU and TAMMIE
L. PERAU,

                                             Plaintiffs,

      -v.-                                              5:07-CV-01329
                                                                 (NPM/GJD)

KELLY L. EWALD, Special Agent IRS;
UCA No. 1; UCA No. 2; THOMAS
RUBEL, Special Agent; CHRISTOPHER
VICKERS, Special Agent; DOUGLAS
MILLER, Special Agent; RONALD
KIDDER, Computer Investigative
Specialist; FRANK PEREZ, Special Agent;
THOMAS FATTORUSSO, Special Agent;
JASON LESHINKSKY, Special Agent;
NICHOLAS FINOCCHIO, Special Agent;
and MICHAEL KINAHAN, Special Agent,

                                             Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HOFFMANN, HUBERT & HOFFMANN, LLP<br>Attorneys for Plaintiffs<br>4629 Onondaga Boulevard<br>Syracuse, New York 13219 | TERRENCE J. HOFFMANN |
| HON. ANDREW T. BAXTER<br>United States Attorney for the<br>Northern District of New York<br>Attorneys for Defendants<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | PAULA RYAN CONAN<br>Assistant United States Attorney |

Neal P. McCurn, Senior District Judge

***MEMORANDUM, DECISION AND ORDER***

## *I.  Introduction*

Presently before the court in this action brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971), is a motion by defendants for summary judgment pursuant to Federal Rule of Civil Procedure 56 seeking judgment in their favor as to both counts of the amended complaint.

## *II.  Procedural Background*

Plaintiffs Thunder Island Amusements, Inc. ("TIA"), Harold L. Perau ("Mr. Perau") and Tammie L. Perau ("Mrs. Perau") (collectively "Plaintiffs") initially commenced this action on December 20, 2007 against IRS Special Agent Kelly L. Ewald ("Ewald") as well as "John Doe 1-50 and Jane Doe 1-50, Federal Agents and/or State Agents." Dkt. No. 1.  Thereafter, a pre-answer motion to dismiss the complaint, or in the alternative for summary judgment, was filed by the aforementioned defendants.  Plaintiffs subsequently amended their complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1), to, among other things, substitute defendants UCA No. 1, UCA No. 2, Thomas Rubel, Christopher Vickers, Douglas Miller, Ronald Kidder, Frank Perez, Thomas Fattorusso, Jason Leshinksky, Nicholas Finocchio, and Michael Kinahan (collectively, "newly named defendants"), for defendants John Doe 1-50 and Jane Doe 1-50.  The amended complaint includes claims against all defendants pursuant

2

to the Fourth Amendment to the United States Constitution (Count I) and Article I, Section 12 of the New York State Constitution (Count II).  After all papers were filed regarding the motion to dismiss or for summary judgment, the court notified the parties that said motion was being converted to a motion for summary judgment, and allowed the parties to file any additional materials pertinent to same.  Oral argument was not heard, and the motion is decided solely on the submitted papers.

## *III.  Factual Background*

The following facts are undisputed.

On December 17, 2004, Mr. Perau met with two individuals at his place of business, TIA, in Fulton, New York, who held themselves out to be a real estate agent and her client, a businessman who was considering purchasing TIA.  The two individuals whom Mr. Perau met that day were in fact Internal Revenue Service -Criminal Investigative Division ("IRS-CID") Special Agents working undercover, one of whom was wearing a concealed recording/transmitting device during their meeting with Mr. Perau.  At a separate location, Ewald, also a Special Agent with IRS-CID, listened to the conversation between the undercover agents and Mr. Perau in "real time," that is, at the same time that the recorded conversation took place.

On December 21, 2004, Ewald applied to United States Magistrate Judge George H. Lowe for the issuance of four warrants ("the Search Warrants") authorizing federal law enforcement agents to search the TIA business premises, the personal residence of Mr. And Mrs. Perau, a conversion van, and a utility trailer, for "fruits, evidence and instrumentalities of criminal tax offenses against

3

the United States," specifically, violations of Title 26, United States Code section 7206(1) (subscribing to a false federal income tax return) and Title 31, United States Code section 5324 (structuring transactions to evade reporting requirements) for the tax years 1999 through 2003.

The Search Warrants were approved by Magistrate Judge Lowe, and were executed the following day, December 22, 2004. There were two search teams: one for the residence of Mr. and Mrs. Perau, and the other for the TIA business location. Ewald was in charge of the search team at the business location; she remained at that location throughout the day. Ewald's search-day assignment was to interview Mr. Perau; she did not participate in executing any of the other Search Warrants (i.e. the residence or any vehicle).

In late February 2006, Ewald's investigation of Plaintiffs concluded. No criminal charges were brought against any of the Plaintiffs. By letter dated March 31, 2006, the IRS notified Mr. Perau that he was no longer the subject of a criminal investigation. This action was commenced on December 20, 2007, two years and 363 days after the execution of the Search Warrants.

## *IV. Discussion*

### *A. Legal Standard*

A motion for summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). "In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at

4

trial." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (internal quotation and citation omitted).

The movant has the burden to show that no genuine factual dispute exists. See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citation omitted). Moreover, when the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. See id.

When deciding whether a material issue of fact is in dispute, the court is cognizant that a fact is "material" if "it might affect the outcome of the suit under governing law." White v. Haider-Shah, No. 9:05-CV-193, 2008 WL 2788896, at *4 -5 (N.D.N.Y. Jul. 17, 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). Also, "[a] material fact is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id., quoting Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.

### *B.  Analysis*

Defendants argue that the action against all defendants except Ewald is barred by the statute of limitations. Ewald seeks summary judgment on the claims against her on the merits, or alternatively, under the doctrine of qualified immunity. These arguments will be addressed in sequence.

#### *1.  Statute of Limitations*

It is undisputed that the statute of limitations for a Bivens action arising in New York is three years. See Tapia-Ortiz v. Doe, 171 F.3d 150, 151 (2d Cir. 1999) (citing Owens v. Okure, 488 U.S. 235, 251, 109 S.Ct. 573 (1989)). It is further undisputed that this Bivens action was commenced on December 20, 2007,

5

two years and 363 days after the execution of the Search Warrants.  See Defs.' Rev. Statement of Material Facts, ¶ 22 ("SOMF").  The issue presently before the court is whether Plaintiffs' substitution of the newly named defendants for John and Jane Doe defendants relates back to the filing of their original complaint, thus rendering timely the Bivens claims against said newly named defendants.

Rule 15 of the Federal Rules of Civil Procedure allows amendments to a pleading to relate back to the date of the original pleading under certain circumstances.  See Fed. R. Civ. P. 15(c).  The Court of Appeals for the Second Circuit has held that "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities."  Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995).  On the other hand, where the newly-added defendants were not named due to a "'mistake' concerning the identity of the parties[,]" Rule 15(c) permits the relation back of an amendment.  Id.

Defendants argue that Plaintiffs chose to wait until the end of the three-year limitations period to commence this action, without having done the necessary legwork to identify the other law enforcement officials they intended to sue, which does not meet the definition of a "mistake" under Rule 15(c).  Plaintiffs counter that it was a "mistake" to use the generic John and Jane Doe names because "[they] had knowledge that [d]efendants other than Ewald were undercover IRS agents as well as other government agents, therefore, these [d]efendants were not completely unknown.  It was just the fact that their true names were not known, but they could have been identified as undercover agents or IRS agents."  Defs.'

6

Mem. of Law in Opp'n to Pls.' Mot. to Dismiss or in the alternative for Summ. J., at 9, Dkt. No. 20.

Plaintiffs further argue that Defendants are equitably estopped from seeking dismissal of the newly named defendants on statute of limitations grounds because Plaintiffs attempted to access information from the IRS in a timely manner via a Freedom of Information Act ("FOIA") request, but the IRS refused to divulge documents identifying the named defendants until informal discovery, which took place after the statute of limitations expired.

First, Plaintiffs misconstrue the definition of "mistake" under Rule 15(c). Where, as here, a plaintiff fails to identify individual defendants "when the plaintiff knows that such defendants must be named[, such failure] cannot be characterized as a mistake." Barrow, 66 F.3d at 470. Second, Plaintiffs' equitable estoppel argument carries no weight. "Equitable estoppel will apply if the defendants engage in fraud, misrepresentation, deception, or intentional concealment to induce a plaintiff to refrain from filing a timely action." Bove v. New York City, 213 F.3d 625, 2000 WL 687720, at *2 (2d Cir. 2000) (citing Farkas v. Farkas, 168 F.3d 638, 642 (2d Cir. 1999)). The evidence submitted by Plaintiffs, consisting of an affidavit of Mr. Perau and copies of correspondence between Mr. Perau and the IRS, does not support a conclusion that Defendants here acted in "fraud, misrepresentation, deception, or intentional concealment." See id. In fact, according to the documents attached to Mr. Perau's affidavit, as early as February 2007, some ten months before the expiration of the statute of limitations on Plaintiffs' claims, the IRS notified Mr. Perau that he must identify the documents he desires, and that should he fail to do so, the IRS will assume no

7

documents are required and close the file on Mr. Perau's FOIA request.  See Att. A to Aff. of Harold L. Perau III, June 5, 2008, Dkt. No. 20 ("Perau Aff."). Accordingly, the proverbial ball was left in Mr. Perau's court.  There is no evidence that Defendants acted in such a way to warrant the application of equitable estoppel here.  Plaintiffs' argument that Defendants acted improperly is further belied by the undisputed declaration of Ewald that she personally gave a copy of the search warrant inventory to Mr. Perau at the end of the day on December 22, 2004.  See Decl. of Kelly L. Ewald, May 1, 2008, ¶ 22, Dkt. No. 14 ("Ewald Decl.").  Said inventory provides the names of several of the newly named defendants.  See Ex. F to Ewald Decl.

 Finally, the court gives short shrift to Plaintiffs' intimated argument, set forth by attorney affidavit, that the identification of "UCA No. 1" and "UCA No. 2" as defendants in their amended complaint somehow constitutes an acceptable substitution of a named defendant for a John or Jane Doe defendant because they are "self described pseudo name[s] of the defendant[s] intended to be named." Supp. Aff. of Terrance J. Hoffman, April 9, 2009, ¶ 7, Dkt. No. 30.  Defendants cannot avoid a statute of limitations bar by substituting one pseudonym for another.  See Covington v. Warden of C-95, No. 93-cv-1958, 1996 WL 75211, at *4 (E.D.N.Y. Feb. 8, 1996) (citing Barrow, 66 F.3d at 468).

 Accordingly, because Defendants' untimely substitution of the named defendants UCA No. 1, UCA No. 2, Thomas Rubel, Christopher Vickers, Douglas Miller, Ronald Kidder, Frank Perez, Thomas Fattorusso, Jason Leshinksky, Nicholas Finocchio, and Michael Kinahan, for defendants John Doe 1-50 and Jane Doe 1-50 was not a "mistake" within the definition of Fed. R. Civ. P. 15(c), all claims against said newly named defendants are dismissed.

Remaining for this court's determination is the disposition of Plaintiffs' claims against Ewald.

### 2. *Claims Against Ewald*

In their amended complaint, Plaintiffs allege that Ewald violated their rights under the Fourth Amendment to the United States Constitution as well as Article I, Section 12 of the New York State Constitution in several ways. Primarily, Plaintiffs allege that Ewald made knowingly false statements as well as material omissions in her affidavit in support of the application submitted to Magistrate Judge Lowe ("the Affidavit"), resulting in the issuance of the Search Warrants. Plaintiffs also allege that Ewald searched and seized property outside the parameters of the Search Warrants and failed to return Plaintiffs' property to them. Finally, Plaintiffs allege that during the search, Ewald "physically terrorized" them.

Ewald contends that no factual disputes remain as to these claims, and therefore, she is entitled to summary judgment dismissing this action against her. In the alternative, Ewald argues that she is entitled to qualified immunity, insofar as Plaintiffs' claim that she made knowingly false statements as well as material omissions in the Affidavit.

As an initial matter, the court grants Ewald's motion for summary judgment regarding Plaintiffs' claims against her pursuant to the New York State Constitution. Because Ewald is a federal official, and because Plaintiffs possess an alternative remedy for their claims against her, the claims under Article I, Section 12 of the New York Constitution are dismissed. See Li v. Aponte, No. 05-Civ.-6237, 2008 WL 4308127, at *11 (S.D.N.Y. Sept. 16, 2008).

### a. *Fifth Amendment*

Plaintiffs seek monetary damages for their claim that Ewald violated their Fourth Amendment constitutional rights by failing to return seized property, and by seizing items outside the scope of the Search Warrants.  To be sure, as opposed to a claim for return of the property, which would more properly be brought as a civil action under Federal Rule of Criminal Procedure 41,[1] see Bonilla v. United States, No. 06-CV-1198, 2008 WL 4104579, at *2-3 (E.D.N.Y. Sept. 4, 2008), a claim for damages under the Due Process Clause of the Fifth Amendment against a federal official such as Ewald may be properly entertained as part of a Bivens action, see Dotson v. Griesa, 398 F.3d 156, 166 (2d Cir. 2005) (citing Davis v. Passman, 442 U.S. 228, 244-49, 99 S.Ct. 2264 (1979) (recognizing Bivens action for violation of Fifth Amendment's Due Process Clause)).  Aside from Plaintiffs having cited the improper constitutional amendment for support, the record does not reflect any admissible evidence upon which a jury could find that Ewald failed to return seized property to Plaintiffs.  To be sure, Mr. Perau indicates generally in his affidavit that "most" of his personal and business records were returned to him, see Perau Aff., ¶¶ 17, 19, and specifically that the money confiscated from his safe was returned as well, see ¶ 18.  Nowhere in his affidavit, however, does Mr. Perau specifically identify the property which allegedly was not returned.  In their response to Defendants' Revised Statement of Material Facts, Plaintiffs allege generally, without citation to the record, that some of the personal and business records that were seized were never returned and specifically that "the original Abstract of Title to the Plaintiff[s'] then residence was never returned."  Pls.' Resp. to Defs.' Revised Statement of Material Facts, ¶¶ 9, 12, Dkt. No. 30 ("Resp.

---

[1] The court takes judicial notice that no such civil action has heretofore been filed by Plaintiffs.

10

SOMF"). It is axiomatic that allegations in a statement of material facts or response thereto do not constitute admissible evidence upon which a rational trier of fact could rely in resolving a factual issue. See Murray v. Pataki, No. 9:03-CV-1263, 2009 WL 981217, at *4 (N.D.N.Y. Apr. 9, 2009). Moreover, the court's review of the record, which it was not required to undertake considering Plaintiffs' failure to comply with the Local Rules[2], reveals nothing to support their allegation. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted). Accordingly, Ewald is entitled to summary judgment on Plaintiffs' claim against her in this regard.

### b.  Fourth Amendment
### I.  Excessive Force

Regarding Plaintiffs' purported excessive force claim, the Fourth Amendment protects individuals from unreasonable force by government officials in the course of an arrest or detention. See Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006). While in their amended complaint Plaintiffs here allege that Ewald "physically terrorized" them, see Am. Compl. ¶ 36, no such claim is made by Mr.

---

[2] Specifically, Local Rule 7.1 requires that:
The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.

N.D.N.Y. R. 7.1(a)(3) (emphasis in original).

Perau in his affidavit, which is the only evidence proffered by Plaintiffs in opposition to the pending motion for summary judgment. Moreover, Plaintiffs admit that Ewald "did not use or display her firearm at any time" during the execution of the search warrants. See Resp. SOMF ¶ 8. There being no evidence in the record to support Plaintiffs' excessive force claim against Ewald, the motion for summary judgment by Ewald is granted in this regard.

## *II.  Unreasonable Search and Seizure*

Finally, Plaintiffs' allege that Ewald violated their Fourth Amendment right to be free from unreasonable search and seizure when she made knowingly false statements as well as material omissions in the Affidavit submitted to Magistrate Judge Lowe, resulting in the issuance of the Search Warrants. A plaintiff in a Bivens action challenging a warrant on this basis must make the same showing that is required under Franks v. Delaware, 438 U.S. 265, 155-56, 98 S.Ct. 2674, 2676-77 (1978). See Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994) (challenge to search warrant in context of action pursuant to 42 U.S.C. § 1983). See also Aponte, 2008 WL 4308127, at *11 (citing Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir.1995) ("Because [§ 1983 and Bivens actions] share the same 'practicalities of litigation,' federal courts have typically incorporated § 1983 law into Bivens actions.")). Here, Plaintiffs "must show that [Ewald] knowingly or deliberately, or with reckless disregard of the truth, made false statements or material omissions in [her] application for a warrant, and that such statements or omissions were necessary to the finding of probable cause." Velardi, 40 F.3d at 573. Thus, if the court finds as a matter of law that the magistrate judge would have found probable cause for the search warrants upon an affidavit that includes the alleged material omissions and from which the alleged false statements are omitted, Ewald's

motion for summary judgment on Plaintiffs' Fourth Amendment claim must be granted.  Accordingly, some discussion of probable cause jurisprudence is warranted.

The Supreme Court has instructed that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and [] the belief of guilt must be particularized with respect to the person to be searched or seized." Maryland v. Pringle,  540 U.S. 366, 371, 124 S.Ct. 795, 800 (2003) (internal citation and quotation omitted).  The Court of Appeals for the Second Circuit has aptly summarized the law to be followed when deciding whether probable cause exists to issue a search warrant:

> While probable cause requires more than a "mere suspicion," of wrongdoing, Mallory v. United States, 354 U.S. 449, 455, 77 S.Ct. 1356 (1957), its focus is on "probabilities," not "hard certainties," Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317 (1983).  In assessing probabilities, a judicial officer must look to " 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " Id. (quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302 (1949)); accord United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004).  "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place" in a probable cause determination.  Gates, 462 U.S. at 235, 103 S.Ct. 2317.  Nor can probable cause be analogized to a prima facie case. See id. (observing that " 'only the probability, and not a prima facie showing, of criminal activity' " is necessary to establish probable cause to search or arrest (quoting Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, (1969))).  In sum, probable cause does not demand any showing that a good-faith belief be "correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535 (1983). It requires only such facts as make wrongdoing or the discovery of evidence thereof probable.

Walczyk v. Rio, 496 F.3d 139, 156-57 (2d Cir. 2007).

According to the Affidavit submitted to Magistrate Judge Lowe, "[t]he property sought to be seized . . . consists of financial records belonging to [Plaintiffs] that are believed to be fruits, evidence and instrumentalities of criminal tax offenses against the United States, specifically, [26 U.S.C. § 7206(1) (subscribing to a false federal income tax return) and 31 U.S.C. § 5324 (structuring transactions to evade reporting requirements)] for the tax years 1999 to 2003."  SOMF at ¶ 3.  See also Ex. A to Ewald Decl.

### *i.  Alleged False Statements*

In the Affidavit, Ewald stated that Mr. Perau told the undercover IRS agents that he and Mrs. Perau paid for most of their personal expenses through TIA, and that the amount of income reflected on their personal tax returns did not appear to accurately account for this; that he and Mrs. Perau sometimes held back depositing TIA's full cash receipts in order to avoid having to file Currency Transaction Reports; and that Mr. Perau was paying some TIA employees in cash and off-the-books.  See SOMF ¶ 7, citing Ex. A to Ewald Decl.  Plaintiffs admit that such statements were made by Ewald, but dispute the accuracy of same, and allege that "those representations of fact were either blatantly false and/or gross material [mis]representations of the facts of the conversations that were admittedly recorded by the Defendants."  Resp. SOMF at ¶ 3.  Despite the Local Rule requiring a specific citation to the record where a factual issue arises, unfortunately, Plaintiffs only generally dispute Defendants' statement of material fact at Paragraph 7 without specific citation to the record, and instead refer the court to Mr. Perau's 20-page and 23-paragraph affidavit "for specific designation of false statements and omissions of material facts."  Id.

Again, the court is not obligated to search the record for proof of a factual

14

dispute. See Amnesty America, 288 F.3d at 470. Nonetheless, the court has listened to the audio recording of the December 17, 2004 conversation between Mr. Perau and undercover IRS agents, while simultaneously reviewing the written recording for accuracy. See Exs. B and C to Ewald Decl. The court has further compared statements in the Affidavit to the transcript for accuracy.

For example, in the Affidavit, Ewald states that Mr. Perau told undercover IRS agents that he thought about selling TIA at the end of 2002, and decided to increase the reported net profit, which he did by increasing the amount of cash deposits to TIA's bank account. See Ex. A to Ewald Decl., ¶ 16. The audio and written transcript of the conversation between Mr. Perau and the undercover agents, reveals that the following was said:

> H. This is what my accountant did for me this spring. This is '99 through 2003. As you know, accountants have a way of doing things. Okay, they take the net operating profit, they like to add back in depreciations.
>
> L. Right
>
> J. Okay, right, right, right.
>
> H. And these are the numbers that, bottom lines that he came in with. The difference between this year and this year is, is that, okay, end of this year, I was thinking about putting the place on the market.
>
> J. Uhm-hmm.
>
> H. So I thought that the bottom line should reflect a little bit more.
>
> J. So how did you, how did you manage that?

15

> H.   I just deposited
>
> J.   More cash.
>
> H.   More of the cash.

Ex. B to Ewald Decl., at 2569-2591.  ("H" is Harold L. Perau; "L" and "J" are undercover IRS agents.)

Ewald also stated that according to Mr. Perau, on days when TIA generated cash in excess of $10,000, he or someone acting on his behalf would deposit less of the cash into TIA's bank account to avoid filing a Currency Transaction Report. See Ex. A to Ewald Decl., at ¶ 21.  The audio and written transcript of the conversation between Mr. Perau and the undercover agents, reveals that the following was said:

> J.   So now, let me ask you a question.  Are you depositing a lot of cash?
>
> H.   Yes.
>
> J.   You depositing like every day on your, on your busy weeks?
>
> H.   Or more.
>
> J.   Okay.  The bank's filling out those forms or no?
>
> H.   Um, the only form, now it's not a form anymore, um they use your driver's license number or social security number.  But that's more than ten grand in cash.
>
> J.   Mmm, uhm-hmm.
>
> H.   So, we typically, if there's more than $10,000 in cash.

      J.     Right.

      H.    We hold some of it back.

      J.     Okay, for, okay, I got you.

      H.    And we may have a thirty thousand dollar deposit for one day.

      J.     Uhm-hmm.

      H.    But it's never, it never, we try not to get into the ten grand in cash. We just, we hold it back.

      J.     So you put in seven today, seven tomorrow, seven the next day, seven the next, something like that.

      H.    Right.

      J.     Okay.

      H.    We get a rainy day, we make

      L.     All right, yeah.

      J.     Okay.

      H.    We add to the deposit.

Ex. B to Ewald Decl., at 3424-3467.

    Not only are the foregoing conversations accurately represented by Ewald's statements in the Affidavit, they also support a finding of probable cause to believe that Plaintiffs were structuring currency transactions in violation of federal law. The elements of a charge of structuring transactions pursuant to 31 U.S.C. § 5324 are:

> (1) the defendant must, in fact, have engaged in acts of structuring;
> (2) he must have done so with knowledge that the financial
> institutions involved were legally obligated to report currency
> transactions in excess of $10,000; and (3) he must have acted with the
> intent to evade this reporting requirement.

United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 2005) (citations omitted).  Mr. Perau's statements to the undercover IRS agents establish at the very least the probability that Plaintiffs were structuring deposits to their bank account with the intent to evade the reporting requirement.  Further, Mr. Perau's statements regarding depositing more cash in order that TIA's "bottom line" reflected a little bit more for purposes of selling the business establishes probable cause to believe that Plaintiffs filed a false tax return.  The elements of a charge of filing a false tax return pursuant to 26 U.S.C. § 7206(1) are as follows:

> (1) that the defendant made or caused to be made, a federal income
> tax return for the year in question which he verified to be true; (2)
> that the tax return was false as to a material matter; (3) that the
> defendant signed the return willfully and knowing it was false; and
> (4) that the return contained a written declaration that it was made
> under the penalty of perjury.  A false statement is material when it has
> the potential for hindering the IRS's efforts to monitor and verify the
> tax liability of the corporation and the taxpayer.

United States v. Pirro, 212 F.3d 86, 89 (2d Cir. 2000) (citations and quotations omitted).

### ii.  *Alleged Material Omissions*

Plaintiffs primarily contend that Ewald omitted material information from the Affidavit, specifically, the substance of a conversation between UCA No.1 and Mr. Perau, which took place sometime "[i]n the late Summer and Fall of 2004" wherein UCA No.1, purporting to be a real estate agent representing prospective TIA buyers, "advised [Mr. Perau] that her prospective buyers were particularly

interested in case payments and how cash receipts were handled or processed by Plaintiffs." Perau Aff., ¶ 9.  Further, Mr. Perau alleges that UCA No.1 "insisted that her own clients would probably only be interested in paying the asking price if there were opportunities to receive substantial cash income that could be protected from disclosure to taking authorities." Id.  UCA No.1 also allegedly informed Mr. Perau "that it would be in [his] best interest to answer any inquiries in that regard by the potential purchasers that there were numerous opportunities to obtain and conceal cash payments and to suggest to said potential purchasers that the Plaintiffs may have taken advantage of such opportunities in the past." Id. Finally, according to Mr. Perau, UCA No.1 told him to "[t]ell them what they want to hear." Id.

       Assuming for the sake of this analysis that Ewald had knowledge of the alleged conversation between UCA No.1 and Mr. Perau, which, to be sure Ewald disputes, and accepting Mr. Perau's allegations as true, nonetheless, a finding of probable cause for the issuance of the Search Warrants is not negated.  The substance of the alleged conversation, which could be interpreted as an inducement by UCA No.1 of Mr. Perau to make certain incriminating statements, would not be viewed by a magistrate in a vacuum, but would instead be subject to analysis of the other evidence submitted with the search warrant application. Here, the "totality of the circumstances" would lead to a finding of probable cause that a crime had been committed, and that the fruits, instrumentalities and evidence of said crime could be found at the places to be searched.  Had Mr. Perau been charged with a crime, he would be entitled to provide evidence of his conversation with UCA No.1 in his defense for a jury to decide, but the fact that such a conversation took place would not have been enough to overcome a finding

of probable cause on an application for a search warrant based on the incriminating statements that Mr. Perau did in fact make.

Accordingly, Ewald is entitled to summary judgment on Plaintiffs' Fourth Amendment claim against her. While Plaintiffs failed to properly cite the record in support of their claim that Ewald made false statements in the Affidavit submitted to Magistrate Judge Lowe, the court finds that certain of her statements accurately reflect incriminating statements made by Mr. Perau to undercover IRS agents, upon which a finding of probable cause to issue search warrants was accurately based. Moreover, the court finds that the alleged material omission by Ewald was in fact not material to the finding of probable cause.

### *V.*   *Conclusion*

In accordance with the foregoing analysis, the motion for summary judgment by all defendants against all plaintiffs dismissing the entire action against them, see Dkt. No. 14, is hereby GRANTED.

The Clerk of the Court is directed to close the file accordingly.


IT IS SO ORDERED.


DATED:   June 29, 2009
         Syracuse, New York

_____
Neal P. McCurn
Senior U.S. District Judge